# UNITED STATES DISTRICT COURT
for the
Eastern District of Missouri

| | | |
|---|---|---|
| William Wilson | ) | Case No.: |
| 1370 Lindenwood Ct | ) | |
| Farmington, MO 63640 | ) | |
|     Plaintiff, | ) | JURY TRIAL DEMANDED |
| | ) | |
| -v- | ) | |
| | ) | |
| Yotta Technologies Inc. | ) | |
| SERVE AT: | ) | |
| 41 East 11th Street, Floor 11 | ) | |
| New York, NY 10003 | ) | |
|     Defendant, | ) | |

## COMPLAINT FOR CIVIL CAUSE

COMES NOW, Plaintiff William Wilson, and states the following for his Complaint against Defendant Yotta Technologies Inc. and alleges as follows:

## PARTIES TO THE COMPLAINT

1. Plaintiff William Wilson, an individual, and resident of the State of Missouri for at least 90 days preceding this matter. Plaintiff resides at 1370 Lindenwood CT. Farmington, MO 63640

.
2. Defendant Yotta Technologies Inc., a corporation, is incorporated under the laws of the State of Delaware and has its principal place of business in New York City the State of New York.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the parties and the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendant and the amount in controversy exceeds $75,000.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this district.

## FACTS

5. Plaintiff engaged in a banking relationship with Defendant starting on or about April 03, 2023.

6. Defendant approved Plaintiff for the use of its services and issued him a banking account bearing the account number ******3695 and a Yotta Debit Card bearing the number ****-****-****-6720.

7. Defendant is a financial technology company, not a bank, and relies on its banking partner Evolve Bank and Trust to provide "banking services."

8. Defendant markets itself as a bank for winners, as seen by its website at https://www.withyotta.com.

9. Defendant markets that it pays out rewards, up to one million dollars ($1,000,000.00) every day.

10. Defendant offers nightly sweepstakes that allow account holders to pick five numbers 1-99 and yotta-ball number with number choices of 1-99 and is marketed to be "like the power ball but free."

11. Defendant's nightly sweepstakes drawing (the "Sweepstakes") promises prizes from $0.02 (Two Cents) all the way up to a jackpot prize of $1,000,000.00 (One Million Dollars).

12. Defendant claims that the following table of odds represents a person's odds to win a prize:  This information is also able to be found at https://www.withyotta.com/official-rules

| Matching Yotta Ball | Number of Matching Numbers | Prize* | Odds |
|---|---|---|---|
| Yes | 0 of 5 | $0.03 per ticket | 1:129 |
| Yes | 1 of 5 | $0.10 per ticket | 1:464 |
| Yes | 2 of 5 | $0.75 per ticket | 1:5,282 |
| Yes | 3 of 5 | $20 per ticket | 1:161,995 |
| Yes | 4 of 5 | $2,000* | 1:15,065,513 |
| Yes | 5 of 5 | $1,000,000** | 1:7,080,791,256 |
| No | 0 of 5 | $0 | 1:1.3 |
| No | 1 of 5 | $0 | 1:4.7 |
| No | 2 of 5 | $0.02 | 1:54 |
| No | 3 of 5 | $0.20 | 1:1,653 |
| No | 4 of 5 | $1,000* | 1:153,729 |
| No | 5 of 5 | $20,000*** | 1:72,252,972 |

13. Defendant distributes entries into the sweepstakes drawing by issuing tickets ("draws" "chances"). upon issuing said tickets to its account holders, they are able to select their winning numbers (as described in line 10 of this complaint) for the nightly sweepstakes drawing.
14. Defendant explains how to get entry tickets to said sweepstakes as follows:
    a. Have Funds on Deposit with Yotta App. For every $25 you have on deposit up to $10,000, you will receive one (1) Ticket. For every $150 above $10,000, you will receive one (1) ticket.
    b. For every paycheck direct deposited into Yotta, you will receive 5% of the amount of the paycheck in tickets one time for the following week's contest. On your very first paycheck deposited, you get 100% of the amount in tickets for that day's contest.
    c. Yotta also allows account holders to gain tickets for debit card purchases, as apart of its "Rewards program". Yotta guarantees on said debit card purchases it will payout either up to 100% a cashback reward or up to 100% in tickets credited.
        i. Example: a purchase of $10.00 could be rewarded as follows:
            1. $10.00 issued in a cashback reward with no tickets issued;
            2. 10 tickets issued for nightly draw;
            3. 5 tickets issued for nightly draw and $1.00 in cashback reward, or
            4. Any variation of tickets and or cashback rewards.
        ii. These rewards are given to account holders via Yotta Prize boxes.
15. Plaintiff, from the date of opening an account with Defendant, has used the account as a regular everyday bank account. Plaintiff made deposits and made purchases using his Yotta debit card.
16. On or about April 15, 2023Plaintiff made a purchase at Walmart in Farmington, MO in the amount of $4.00.
17. Around thirty minutes after Plaintiff made the first purchase he attempted to check out and charge to his Yotta Debit Card at the same Walmart in the amount of $116.26.
18. Plaintiff logged into his Yotta app and was displayed the following message: "Your account has been locked for your own protection" "We hate to act like a bouncer, but we were unable to verify your information, so we had to lock your account. In the meantime,

you will be unable to make transfers, connect to new bank accounts, or use your Yotta Card if you have one. Any pending transfers from an external bank account will be returned to that account. If you need to withdraw settled funds, please contact Support@withyotta.com or tap the chat icon. We deal with fraud regularly, and we do this to ensure your funds are secure. Any additional questions can be resolved by contacting support."

19. Plaintiff's account was completely frozen, with no way of accessing his funds or withdrawing them to another bank account.
20. Plaintiff also received an email stating that his account had only been temporarily locked and to respond to the email to have it restored.
21. Plaintiff replied to the email stating he had made the $4.00 purchase at Walmart and was attempting to check out with his groceries when his card was declined for the charge of $116.26.
22. Defendant's support representative named, Penelope stated that additional verification was to confirm eligibility to have an account with Yotta. The representative requested that I do the following:
    a. Take a six-second video of myself holding my unexpired state-issued Identification or Driver's License.
    b. That in the video I state my full name and that I authorize an account with yotta.
23. The Representatives email continued that since Yotta is an online-only platform with no branches, these actions are required to verify account holders. That Yotta frequently deals with issues of fraud and or Identity theft.
24. Plaintiff responded to the email asking if the issue was that Yotta was having issues with or if this was caused by a transaction.
25. Further, Plaintiff stressed his frustration to Defendant in the reply and stated that Plaintiff was confused as to how Defendant allowed Plaintiff to use the account, deposit to the account, and make regular transactions if they had any issues verifying his identity.
26. Defendant only responded by thanking Plaintiff for the submission of the requested video and the additional documents provided to verify Plaintiff's identity.

27. Plaintiff responded by asking that Defendant transfer his settled funds to his connected bank account as Defendant stated it could and would as per Defendant's statement embodied on paragraph 18 of this complaint.
28. Defendant declined Plaintiff's request stating it would not transfer or make any funds available until Defendant could confirm eligibility for the account with them.
29. Defendant canceled all of Plaintiff's outstanding cashback rewards in the amount of $10.41.
30. Defendant's action of freezing Plaintiff's account also stopped Plaintiff from accessing Yotta Prize Boxes.
31. Defendant's actions left Plaintiff without access to his funds and caused him not to be able to buy groceries, pay bills, and get other basic necessities while his account was frozen.
32. Defendant's actions caused Plaintiff to have his power temporarily shut off, causing him to lose a day of working wages.
33. Defendant's actions also included invalidating the 163 tickets Plaintiff had accumulated for the nightly sweepstakes drawing, denying Plaintiff the opportunity to participate and potentially win prizes.
34. Plaintiff was not able to participate in Defendant's nightly sweepstakes on April 15, 2023. His tickets were not honored, and Defendant did not allow Plaintiff to make his picks or use Yotta's auto-pick feature.
35. Plaintiff was not able to participate in Defendant's nightly sweepstakes on April 16, 2023. His tickets were not honored, and Defendant did not allow Plaintiff to make his picks or use Yotta's auto-pick feature.
36. Defendant has since updated its app, and now users do not have the option of selecting their numbers for tickets. Rather Yotta automatically picks users winning numbers and gives users the option to go back and alter their own picks.
37. Defendant's actions by using a faulty fraud filter which erroneously froze the plaintiff's account in its entirety, also caused the plaintiff to lose the opportunity to win ANY prizes in its nightly drawing sweepstakes ranging from $0.02 to its jackpot or grand prize $1,000,000.00.

38. Defendant has NO WAY of adequately or truthfully saying that Plaintiff could not have won the grand prize on the 4/15/2023 or the 4/16/2023 drawing.
39. Unless Defendant is willing to state it runs unfair and rigged sweepstakes that it maintains control of who and how much a person wins, it cannot say that there is no plausibility that:
    a. Had the Plaintiff's account been unfrozen, and he had normal access, control, and the right to choose his numbers or use the auto draw feature for the tickets available for the draw held on 4/15/2023, that Plaintiff could not have won the grand prize of $1,0000,000.00. To make such a claim would invalidate the integrity of the sweepstakes in its entirety.
    b. Had the Plaintiff's account been unfrozen, and he had normal access, control, and the right to choose his numbers or use the auto draw feature for the tickets available for the draw held on 4/16/2023, that Plaintiff could not have won the grand prize of $1,0000,000.00. To make such a claim would invalidate the integrity of the sweepstakes in its entirety.

**WHEREFORE, Plaintiff** alleges and brings forth his causes of action as follows:

## COUNT I – BREACH OF CONTRACT

40. Plaintiff incorporates and restates the allegations set forth in paragraphs 1-39 as though they were fully set forth in this paragraph.
41. Plaintiff and Defendant entered into a contractual relationship when Plaintiff opened an account with Defendant and was issued a Yotta Debit Card.
42. Defendant breached the contract by freezing Plaintiff's account without cause, cancelling his outstanding cashback rewards, and invalidating his accumulated sweepstakes tickets ("Entries"), and denying him the opportunity to participate in the nightly sweepstakes drawing.
43. As a direct and proximate result of Defendant's breach of contract, Plaintiff has suffered monetary damages in the form of loss of access to his funds and the loss of potential winnings, including and up to the jackpot prize of $1,000,000.00.
**44.** Defendant's breach of contract was willful, intentional, and without just cause or excuse.

45. Plaintiff has performed all obligations required of him under the contract and is entitled to the benefits provided under the contract.

## COUNT II – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH

46. Plaintiff incorporates and restates the allegations set forth in paragraphs 1-45 as though they were fully set forth in this paragraph.

47. An implied covenant of good faith and fair dealing is inherent in every contract, including the contract between Plaintiff and Defendant.

48. Defendant breached the implied covenant of good faith and fair dealing by freezing Plaintiff's account without providing a valid reason, denying him access to his funds, failing to restore access after Plaintiff provided the requested information, canceling Plaintiff's cashback rewards, invalidating Plaintiff's accumulated tickets for the nightly sweepstakes drawing, and engaging in other wrongful acts and omissions.

49. As a direct and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered damages in an amount to be proven at trial.

## COUNT III - NEGLIGENCE

50. Plaintiff incorporates and restates the allegations set forth in paragraphs 1-49 as though they were fully set forth in this paragraph.
51. Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.
52. Defendant owed a duty of care to Plaintiff to exercise reasonable care in the implementation and use of fraud detection systems and filters in connection with its services and sweepstakes program.
53. Defendant breached its duty of care to Plaintiff by negligently implementing and using a faulty fraud filter that erroneously flagged Plaintiff's account as potentially fraudulent, resulting in the freezing of Plaintiff's account, the cancellation of his outstanding cashback rewards, the invalidation of his accumulated sweepstakes tickets, and the denial of his opportunity to participate in the nightly sweepstakes drawing.
54. Defendant's negligence in the implementation and use of its fraud detection systems and filters directly and proximately caused Plaintiff's damages, including but not limited to the loss of the opportunity to participate in the sweepstakes program and any potential winnings, including the jackpot prize, as well as the loss of accumulated cashback rewards.

55. As a direct and proximate result of Defendant's negligence, Plaintiff has suffered damages in an amount to be determined at trial.

## COUNT IV – STRICT LIABILITY

56. Plaintiff incorporates and restates the allegations set forth in paragraphs 1-55 as though they were fully set forth in this paragraph.
57. Defendant Yotta Technologies Inc. is in the business of providing financial services and operating sweepstakes for its account holders.
58. Defendant has a duty to ensure that its sweepstakes are fair, legal, and transparent, adhering to all applicable laws, rules, and regulations.
59. Defendant's sweepstakes, including but not limited to its ticket distribution, prize allocation, drawing procedures, and fraud detection system, were defectively designed, implemented, or maintained, rendering them unfair, unlawful, and/or non-transparent, and causing Plaintiff's account to be erroneously flagged and locked.
60. As a direct and proximate result of the defective design, implementation, or maintenance of Defendant's sweepstakes and fraud detection system, Plaintiff has suffered harm, including but not limited to the invalidation of his accumulated tickets for the nightly sweepstakes drawing, the denial of the opportunity to participate and potentially win prizes, and the improper freezing of his account.
61. Defendant is strictly liable for the harm caused to Plaintiff by the defects in its sweepstakes and fraud detection system.
62. As a result of Defendant's strict liability for the defective sweepstakes and fraud detection system, Plaintiff is entitled to recover compensatory damages, consequential damages, and any other appropriate relief as determined by the Court.

## COUNT V – FRAUD PER SE AND MISREPRESENTATION

63. Plaintiff incorporates and restates the allegations set forth in paragraphs 1-62 as though they were fully set forth in this paragraph.
64. Defendant, through its actions, engaged in fraud per se and misrepresentation by operating a sweepstakes system that it knowingly misrepresented as fair and legal while

simultaneously failing to honor Plaintiff's existing sweepstakes entries and withholding Plaintiff's cashback rewards.

65. Defendant made material misrepresentations to Plaintiff, including that Plaintiff's account was frozen for his own protection and that his accumulated sweepstakes tickets ("Entries") were invalid.

66. Defendant's misrepresentations and omissions regarding the fairness, legality, and integrity of its sweepstakes system were material, as they induced Plaintiff to participate in the sweepstakes and use Defendant's services.

67. Defendant's misrepresentations and omissions were made knowingly, with the intent to deceive Plaintiff and other account holders, and to induce them to participate in the sweepstakes and use Defendant's services.

68. Plaintiff reasonably relied on Defendant's misrepresentations and omissions, and as a result, Plaintiff suffered damages, including but not limited to the loss of the opportunity to participate in and potentially win prizes from the nightly sweepstakes drawing, and the loss of cashback rewards.

69. As a direct and proximate result of Defendant's fraud per se and misrepresentation, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than the jurisdictional minimum of $75,000.

## COUNT VI – UNJUST ENRICHMENT

70. Plaintiff incorporates and restates the allegations set forth in paragraphs 1-69 as though they were fully set forth in this paragraph.

71. As a direct and proximate result of Defendant's actions, including freezing Plaintiff's account, cancelling his outstanding cashback rewards, invalidating his accumulated sweepstakes tickets, and denying him the opportunity to participate in the nightly sweepstakes drawing, Defendant has been unjustly enriched at Plaintiff's expense.

72. Defendant knowingly accepted and retained the benefits conferred upon it by Plaintiff's participation in the sweepstakes program and the use of its services, including any deposits, fees, and accumulated cashback rewards, with the knowledge that such benefits were being retained at Plaintiff's expense.

73. It would be unjust and inequitable for Defendant to retain the benefits conferred upon it by Plaintiff without compensating Plaintiff for the value of those benefits, as Plaintiff has been deprived of the opportunity to participate in the sweepstakes program and any potential winnings, including the jackpot prize.
74. Plaintiff is entitled to restitution in an amount equal to the value of the benefits conferred upon Defendant.
75. As a direct and proximate result of Defendant's unjust enrichment, Plaintiff has suffered damages in an amount to be determined at trial.

## COUNT VII -VIOLATION OF APPLICABLE LAWS AND REGULATIONS

76. Plaintiff incorporates and restates the allegations set forth in paragraphs 1-75 as though they were fully set forth in this paragraph.
77. Defendant, through its actions, engaged in conduct that violates applicable federal and state laws and regulations governing the operation of sweepstakes, financial services, and consumer protection.
78. Defendant's actions constitute an unlawful practice under the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §§ 407.010, et seq.
79. Defendant engaged in false, misleading, and deceptive practices in connection with the advertising, sale, and provision of its banking services to Plaintiff.
80. Specifically, Defendant violated applicable laws and regulations by:
    a. Failing to provide a fair and legal sweepstakes system as required by state and federal law, as evidenced by its arbitrary suspension of Plaintiff's account, denial of Plaintiff's accumulated sweepstakes entries, and withholding of Plaintiff's cashback rewards;
    b. Engaging in deceptive and misleading marketing practices, including misrepresenting the fairness and legality of its sweepstakes system and its financial services;
    c. Negligently implementing and utilizing a faulty fraud detection system that resulted in the unwarranted suspension of Plaintiff's account and the denial of his sweepstakes entries and cashback rewards; and
    d. Unjustly enriching itself at the expense of Plaintiff and other account holders by retaining their funds and rewards without providing the promised services and benefits. As a direct and proximate result of Defendant's violations of applicable laws and regulations, Plaintiff has suffered damages, including but not limited to the loss of the

    opportunity to participate in and potentially win prizes from the nightly sweepstakes drawing, the loss of cashback rewards, and the inability to access and use his funds as intended.

81. Defendant's actions constitute an unlawful practice under the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §§ 407.010, et seq.
82. Defendant engaged in false, misleading, and deceptive practices in connection with the advertising, sale, and provision of its banking services to Plaintiff.
83. Plaintiff is entitled to recover damages, statutory penalties, and other relief as provided by applicable laws and regulations.

## COUNT VIII – EMOTIONAL AND FINANCIAL DISTRESS

84. Plaintiff incorporates and restates the allegations set forth in paragraphs 1-83 as though they were fully set forth in this paragraph.
85. As a direct and proximate result of Defendant's actions, including but not limited to their fraudulent conduct, misrepresentations, unjust enrichment, negligence, strict liability, and violation of applicable laws and regulations, Plaintiff has suffered emotional and financial distress.
86. Defendant's actions, as alleged herein, were willful, malicious, and carried out with a reckless disregard for the rights and well-being of the Plaintiff.
87. As a result of Defendant's conduct, Plaintiff has experienced significant mental anguish, anxiety, and stress, as well as financial harm, which include but are not limited to the inability to access his funds, the loss of potential winnings in the sweepstakes, and damages related to the account lockout.
88. Defendant's actions have caused the Plaintiff to suffer a loss of confidence, peace of mind, and enjoyment of life, which has resulted in substantial emotional and financial distress.

## COUNT IX UNFAIR AND DECEPTIVE BUSINESS PRACTICES

89. Plaintiff incorporates and restates the allegations set forth in paragraphs 1-88 as though they were fully set forth in this paragraph.

90. Defendant engaged in unfair and deceptive business practices in violation of Missouri law, including but not limited to, falsely advertising itself as a bank, falsely representing the odds of winning prizes in the nightly sweepstakes drawing, and failing to provide Plaintiff with access to his funds and rewards despite his compliance with Defendant's requirements.
91. As a direct and proximate result of Defendant's unfair and deceptive business practices, Plaintiff has suffered damages in an amount to be proven at trial

## JURY DEMAND

Plaintiff William Wilson hereby demands a trial by jury on all triable issues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff William Wilson respectfully requests that this Court enter judgment in his favor and against Defendant Yotta Technologies Inc., and award the following relief:

A. Judgment in favor of Plaintiff and against Defendant Yotta Technologies Inc. on all counts;
B. An award of compensatory damages in an amount to be determined at trial, but in no event less than the jurisdictional minimum of $75,000, including but not limited to the value of the lost sweepstakes opportunities, the amount of withheld cashback rewards, and any other damages suffered by Plaintiff as a result of Defendant's wrongful acts;
C. An award of consequential damages, if applicable, in an amount to be proven at trial;
D. An award of punitive damages, as appropriate under Missouri law, for Defendant's fraudulent and malicious conduct;
E. Pre-judgment and post-judgment interest on all amounts awarded, as provided by law;
F. Declare that Defendant's conduct, as described herein, violates applicable federal and state laws and regulations governing the operation of sweepstakes, financial services, and consumer protection;
G. An order requiring Defendant to cease and desist from further wrongful conduct, including but not limited to the operation of defective fraud detection systems, and to take all necessary actions to ensure the fairness and integrity of its sweepstakes system;

H.  An award of Plaintiff's reasonable attorney's fees, costs, and expenses incurred in bringing this action, as provided by law;

I.  An order requiring an accounting and disgorgement of any unjust enrichment obtained by Defendant as a result of its wrongful conduct;

J.  Such other and further relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

/S./William Wilson
William Wilson
P.O. Box 621
Farmington MO 63640
573-315-5902
Bwcef01@gmail.com